### SPORE *v.* VAUGHN.

*(Supreme Court, General Term, Third Department.* September 14, 1892.)

**1. ACTION TO CANCEL MORTGAGE—CONSIDERATION.**
   In an action to cancel a bond and mortgage, the evidence showed that S., plaintiff's husband, as overseer of the poor of his town, gave his notes to several per-

sons; that he afterwards received money from the town with which to pay the notes, but instead of paying them he absconded with the money; that defendant, as surety on S.'s official bond, paid said notes, and the instruments in suit were given to pay defendant therefor. *Held,* that plaintiff was not entitled to the relief sought, as there was a valid consideration for the bond and mortgage, whether or not defendant was liable on S.'s bond for the notes.

**2. TRIAL—SPECIAL FINDINGS.**
A court is not bound to make findings as to the evidence given in the case.

**3. SAME.**
A request for a special finding as to what took place at a given time is properly refused, where the proposed finding does not contain all that took place thereat.

**4. SAME.**
Where the evidence is conflicting, there is no error in refusing to find special facts as requested.

Appeal from circuit court, Schoharie county.

Action by Lavina Spore against Nathan Vaughn to cancel a bond and mortgage. Defendant had judgment, and plaintiff appeals. Affirmed.

The following are the facts found by the trial court:

"(1) That on the 14th day of January, 1887, the plaintiff duly executed and delivered to the defendant the bond and mortgage referred to in the complaint and answer in this action.

"(2) That at the time of the execution and delivery of said bond and mortgage the plaintiff was the wife of one Wesley Spore, and she was also the sole owner of the real estate covered by said mortgage. It was her sole and separate estate, worth about one thousand dollars, and she owned no other real estate. She could not read or write.

"(3) That prior to the execution of said bond and mortgage, and in the spring of 1886, her said husband, Wesley Spore, had been duly elected to the office of overseer of the poor of the town of Jefferson, qualified as such, given bail, and entered upon the duties of his office.

"(4) That the defendant, Nathan Vaughn, and the defendant's brother, John W. Vaughn, were his bondsmen as such overseer.

"(5) That said Wesley Spore, as such overseer, received into his hands moneys of said town, disbursed some, and continued to act as such overseer until about the middle of December, 1886, when he left said town in a secret manner for parts unknown, and remained away therefrom until the 12th day of January, 1887.

"(6) That, on the day he left said town as aforesaid, the collector of said town paid to him, as such overseer, the sum of three hundred dollars, which had been collected by tax out of the property of said town for poor purposes, and which said three hundred dollars said Spore took away with him when he left as aforesaid.

"(7) That, in addition to said three hundred dollars so taken away by said Spore, he was also the debtor, as such overseer, to said town when he left, in the sum of one hundred and forty-seven dollars, for money received by him as such overseer, and not expended by him as such.

"(8) That during the administration of said office by said Spore, as such overseer, he had borrowed the sum of three hundred dollars, for which he had given his notes, six in number, signed by him as such overseer, to five different persons, which said notes were outstanding and not yet due at the time of the annual meeting of the board of town auditors of said town in the fall of 1886, for the purpose of auditing the accounts of town officers, and hearing reports of money necessary to be raised by the overseer and others for the ensuing year.

"(9) That said Spore appeared before said board at its annual meeting in the fall of 1886, and verbally reported to said board that said six notes, so given by him, and naming them, were outstanding for three hundred dol-

lars, and that it would be necessary to raise that amount to pay said notes, and one hundred dollars in addition for the support of the poor the ensuing year.

"(10) That, after hearing said report, said board passed a resolution that it would be necessary to raise $300 for the support of the poor for the ensuing year.

"(11) The $300 so paid to said Spore the day he went away by the collector, aforesaid, was the same $300 raised by tax on said town under and by virtue of said resolution.

"(12) That prior to the return of said Spore he had written to and his wife had received a letter from him dated at Pittsburgh, Pa., in which he stated to her, among other things, that he was short in his accounts, that if she would raise $350 for him he would return, if not, he should go on further, and that there was no use trying to arrest him.

"(13) In answer to said letter, his wife, this plaintiff, ordered and procured a letter to be written and mailed to him in her name, in which, among other things, she stated that she would raise $350 for him if he would return.

"(14) That said Wesley Spore received said letter, and on the 12th day of January, 1887, came home to his wife's home on the premises in question.

"(15) That on the 13th day of January, 1887, said Wesley Spore paid to the defendant one hundred and twenty-two dollars in money.

"(16) On the 14th day of January, 1887, said Wesley also paid to said defendant twenty-five dollars more in money, and the plaintiff, on the same day and at her husband's request, executed and delivered the bond and mortgage in question.

"(17) It was agreed by and between the plaintiff and defendant and Wesley Spore, at the time of the execution and delivery of said bond and mortgage, that for and on account of the same, and of the money so paid to defendant by said Wesley Spore, the said defendant should pay, or cause to be paid, the said indebtedness of said Wesley, as such overseer, to said town as aforesaid, including the said six notes so signed by said Wesley as overseer, for money borrowed by him as such as aforesaid.

"(18) That in pursuance thereof said defendant immediately paid to Cassius M. Treadwell, the then overseer of the poor of said town, the duly-appointed successor of said Wesley Spore, the said indebtedness of said Wesley Spore as such overseer, including the amount of said six notes, and said Treadwell soon thereafter paid said notes to the holders and owners thereof, and canceled the indebtedness of said Wesley to said town, including said notes.   *   *   *"

The further findings of the court are set forth in the opinion.

Argued before PUTNAM and HERRICK, JJ.

*M. S. Wilcox,* (*William C. Lamont,* of counsel,) for appellant.   *Charles E. Nichols,* (*Hobart Krum,* of counsel,) for respondent.

PUTNAM, J.   On the trial four questions were submitted to the jury, viz.: "Were threats of criminal proceedings against the plaintiff's husband uttered to the plaintiff by the defendant, or by his brother, John W. Vaughn?   Did such threats so constrain the will of the plaintiff as to cause her to execute the bond and mortgage in suit?   Did the plaintiff's husband utter threats to the plaintiff, or attempt to intimidate her with apprehension of criminal proceedings against him, unless she would execute the said bond and mortgage?   Was the plaintiff's will so constrained by such threats or intimidations as to cause her to execute said bond and mortgage?"   To each of which questions the jury answered, "No."   The learned court also, after due deliberation, made the following findings of fact: "That the execution and delivery of said bond and mortgage was the free act and will of the plaintiff, without any fraud, duress, coercion, threats, or undue influence; that there

was a good and valuable consideration for the execution and delivery of said bond and mortgage."

The above findings of the court and jury were sustained by the testimony given upon the trial. Although the plaintiff 'and her husband testified to a state of facts from which duress might be inferred in obtaining the bond and mortgage described in the complaint, yet their testimony was contradicted by the defendant, John W. Vaughn, John B. Gallup, and other testimony given upon the trial. This evidence, if it does not preponderate in favor of the defendant, is at least amply sufficient to sustain the findings of the learned judge who passed upon the case at special term. I think, however, that the weight of evidence upon the question of duress is clearly with the defendant.

As to the consideration for the bond and mortgage, the testimony shows that it was given by the plaintiff to Nathan Vaughn to raise $275 to take up the note given by her husband, or to pay that amount due by him to the town. The facts of the case were known to plaintiff and all the parties to the transaction, and do not appear to have been misstated. If there was a mistake as to the legal question whether defendant and his brother, John Vaughn, were or were not liable on the bond given by them for the plaintiff's husband, on account of the said notes, I am unable to see how that fact affects plaintiff's liability on the bond and mortgage. The testimony does not show that any attempt was made to deceive her on the subject of her husband's liability, or that she was deceived. The parties had some question as to the liability of defendant and his brother on account of the notes; proposed to consult Judge Gilbert on the subject in presence of plaintiff, but, on account of Mr. Spore's illness, did not do so. Thus there is evidence to show that plaintiff knew there was a doubt about her husband's liability to the town on account of the notes. This evidence was sufficient to sustain the finding of the jury that with such knowledge she executed the bond and mortgage to raise the money to take up the notes, whether they were in fact notes for the payment of which the town was charged or were merely the individual notes of Mr. Spore. The evidence in the case justified the finding that the transaction was a loan from defendant to plaintiff, on her mortgage of $275 to raise that amount of money to pay the notes of her husband. Hence it appeared by the evidence that there was sufficient consideration for the bond and mortgage. Hence there must be an affirmance of the judgment, unless some exceptions taken by the plaintiff to the rulings of the court on the trial, or to his findings or refusal to find, should lead to a reversal.

The evidence being ample to sustain the finding of the judge that the execution and delivery of the mortgage described in the complaint were obtained without fraud, duress, coercion, or undue influence, and also showing a sufficient consideration for the bond and mortgage, it is not important to consider whether there was any proper or timely motion for a new trial made. There being, however, no order entered on such motion, it is difficult to see how an appeal can lie from its denial.

It is urged by the plaintiff that the court erred in not finding as requested by her in her proposed sixteenth finding. The answer to this position is that the finding asked the court to find, except as below mentioned, not conclusions of fact or law, but rather evidence given on the trial. A court is not bound to make findings as to the evidence given. However, all that was material in plaintiff's proposed sixteenth finding was in fact found by the court in favor of the plaintiff, among his legal conclusions. As conclusions of law, the court found that the notes given by Spore were his own individual notes, and not the obligations of the town; also that the defendant and his brother, as Spore's bondsmen, were not liable on account of said notes. It is suggested that the court erred in excluding the testimony of

Sager,—"I think she was pretty nervous and troubled;" and the testimony of Dyer and Stevens, that "she was excited;" "her eyes looked as if she had been in trouble;" "she appeared very excited," etc. I think the court did not err in this regard. The evidence of Sager was as to a time before the return of her husband, and the opinion of the witness as to her nervousness at that time was entirely immaterial. The evidence of Stevens was merely his opinion as to her appearance during a conversation between her and the witness, and in the absence of the defendant. The same is true as to the statement of Dyer. Again, the evidence excluded was merely the opinion of the witnesses, and such evidence, offered under such circumstances, has never been deemed admissible.

Again, the plaintiff claims that the court erred in refusing to find as requested in her proposed twentieth finding. The finding was as follows: "That plaintiff was called into the room, and requested to sign the mortgage, and she declined to do so, saying she had been advised by several of her neighbors, naming them, not to sign any papers; that her husband then said, 'Then I shall have to go up. If you don't do it, I am gone up. I shall give myself over to my bail, to do with me as they please.'" The court was not bound to find as requested. The proposed finding asked the court to find as to what took place when plaintiff agreed to execute the mortgage, and states a small part of what Mr. Spore then said to her. According to the testimony of defendant and his brother, Mr. Spore made other statements at that time to his wife, and she answered. The judge was not bound to find as what Spore said at the time in question was a small portion of what he in fact said. The plaintiff should have inserted in her proposed finding all of Spore's statement to his wife.

It is also claimed that the court erred in refusing to find the twenty-first finding as proposed by the plaintiff, which is as follows: "(21) That the plaintiff, thus pressed by her husband, then signed the papers, and I find that the plaintiff would not have executed the papers but for the statements made to her by her husband and the Vaughns, and that she was induced to execute the bond and mortgage by the threats and for fear that her husband would have to go up, and in the belief and fear that if not executed he would be arrested and sent up, or surrender himself, and would be punished for the crime of embezzlement." Whether that finding was correct or not was a question of fact, as to which there was conflicting evidence, and the court was not legally bound to find as requested; especially as the weight of evidence was upon this question rather with the defendant than with the plaintiff. Whether what the plaintiff's husband is proved to have said to her, viz.: "Then I shall have to go up. If you don't do it, I am gone up. I shall give myself over to my bail, to do with me as they please,"—at the time she agreed to give the bond and mortgage, indicates a threat on the part of her husband which induced the plaintiff to execute the bond and mortgage or otherwise, considering the testimony of defendant, his brother, Gallup, and other witnesses, the letters between her and her husband, and the other facts of the case, was a question of fact for the court and jury. It was proved, after the execution of said bond and mortgage, that plaintiff said to Mrs. Gallup, and to Mr. Gallup, that she had executed the mortgage to defendant, and was glad she had done it. She could not live alone, and she wanted him back, and she did it to get him back. And the jury and court, after hearing all the evidence, determined the questions of fact in favor of the defendant, and found that the bond and mortgage were obtained without fraud or duress, and on sufficient consideration. There are quite a number of other exceptions taken on the trial, and mentioned in the points of the appellant. I have examined and considered them all, and do not deem it necessary to discuss them here. I have reached the conclusion that there are none of such exceptions that require a reversal of the judgment. The

questions in the case are principally of fact, and I think were correctly disposed of at the circuit, and hence that the judgment should be affirmed, with costs.